AO 91 (Rev. 08/09) Criminal Complaint

FILED
MAY 12 2026
Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

United States of America
v.

MALISA SUSAN KYLE
*Defendant(s)*

Case No. 26-MJ-416-JFJ

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 10, 2026 in the county of Tulsa in the Northern District of Oklahoma, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a) and 841(b)(1)(A)(viii) | Possession of Methamphetamine with Intent to Distribute |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

Evan Foster
*Complainant's signature*

Evan Foster, DEA TFO
*Printed name and title*

Sworn to before me by phone.

Date: 5/12/26, 10:15am

Jodi Jayne
*Judge's signature*

City and state: Tulsa, OK

Jodi F. Jayne, United States Magistrate Judge
*Printed name and title*

**Affidavit in Support of an Arrest Warrant in the Northern District of Oklahoma**

I, Evan Foster, being duly sworn under oath, do hereby depose and state:

**Introduction and Agent Background**

I am a Tulsa County Deputy Sheriff /Task Force Officer (TFO) assigned to the Drug Enforcement Administration (DEA), United States Department of Justice. I have been a Deputy Sheriff for over 21 years, served with the United States Marshal Service for over 3 years, was a Homeland Security Investigations TFO for approximate 6 years and a K9 handler for over 7 years with the Sheriff's Office, and have been assigned at the DEA since July of 2022. During my tenure, I have received countless hours in specialized training from both federal and local law enforcement agencies. This training has focused upon methods of unlawful manufacturing of illegal narcotics via clandestine laboratories, the installation and monitoring of global positioning satellite (GPS) trackers, Title III wire interceptions, smuggling and distribution techniques, methods of drug trafficking, as well as the means by which drug traffickers derive, launder and conceal their profits from drug trafficking, the use of assets to facilitate unlawful drug trafficking activity and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. I have gained a considerable amount of knowledge about drug trafficking organizations and their members through my training and experience. Based on my experience as a Task Force Officer with the DEA, I know that those involved in international drug trafficking rely heavily on telephones to and distribution of illegal drugs, and that

they frequently employ coded language and slang terminology in an effort to maintain secrecy while engaging in such communications. Through my employment as a Task Force Officer with the DEA, I have gained knowledge in the use of various investigative techniques, including the use of wire and electronic interceptions and other types of electronic surveillance, physical surveillance, undercover investigators, confidential informants, cooperating witnesses, controlled purchases of illegal drugs, consensually-monitored recordings, investigative interviews, trash searches, mail covers, financial investigations, administrative and grand jury subpoenas, and search and arrest warrants. As a result of my participation in the investigation of matters referred to in this affidavit and based upon reports made to me by other law enforcement agencies and witnesses, I am familiar with the facts and circumstances of this investigation.

The information contained in this Affidavit in support of arrest warrant for Melisa Susan KYLE is based on law enforcement encounters with Melisa Susan KYLE on May 10, 2026. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from witnesses, agents, and other law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. § 841(a) and 841(b)(1)(A)(viii) Possession of Methamphetamine with Intent to Distribute have been committed.

**Probable Cause**

On May 10, 20226, Tulsa County Sheriff's Office Deputy, Freddie Alaniz, conducted a traffic stop on a black Mazda CX-50 with California tag number 9NGC461 for improper turn signal while changing lanes (approximately three times). The traffic stop occurred at 19100 East I-44 Tulsa, Oklahoma, located within the Northern District of Oklahoma.

Deputy Alaniz made a passenger side approach and while approaching the vehicle he noticed numerous suitcases in the back of the vehicle. Deputy Alaniz noticed that the back seats were laid down flat to accommodate all the suitcases. Deputy Alaniz made contact with driver and sole occupant of the vehicle, Melisa Susan KYLE. KYLE provided her Missouri Driver's License to Deputy Alaniz.

Deputy Alaniz eventually requested KYLE to have a seat in his patrol unit while Deputy Alaniz issued a written warning. During this interview, Deputy Alaniz noticed that KYLE was extremely nervous and exhibit several indicators of someone who transporting large amounts of drugs across the United States.

Once the backing officers arrived, Deputy Alaniz deployed his Council on Law Enforcement Education and Training (CLEET) certified narcotics K9 partner, Kaine, and conducted a free open-air sniff of the exterior of the vehicle. Certified narcotics K9, Kaine, alerted and then indicated to the smell of narcotics coming from within the vehicle.

Once Deputy Moody arrived on scene, Kyle was secured in the back seat of his patrol vehicle while deputies conducted a probable cause search of the car.

During the probable cause search, Deputy Moody and Deputy Alaniz began searching in the trunk area of the vehicle and opened a black shiny hard shell "Betty Boop" suitcase. Upon opening the suitcase the deputies located a folded black trash bag and numerous dryer sheets laying the inside of the suitcase.

Deputies then opened the zipper on the inside compartments and located numerous large Ziploc bags containing a white crystal-like substance. Through Alaniz training and experience he knew the substance was methamphetamine.

Deputy Moody and Deputy Alaniz then removed a blue hard-shell suitcase and opened it to find more of the same packaging style with dryer sheets and brown paper. Deputies then opened the two side compartments inside the suitcase and located numerous large Ziploc bags containing the white crystal-like substance. This suitcase also had a working digital scale with tray and 3 gallon size Ziploc bags, which appeared to be the same style of Ziploc bags used to hold the crystal-like substance.

Deputy Moody and Deputy Alaniz then opened a large hard shell matte black suitcase with "Betty Boop", on the suitcase. Inside of the suitcase were more dryer sheets and a black plastic trash bag. Inside the two side compartments of this suitcase were numerous large Ziploc bags containing the same white crystal-like substance.

Deputy Alaniz knows from his training and experience that drug traffickers will attempt to mask the smell of the narcotics by utilizing dryer sheets in an attempt to evade narcotics K9 detection.

Behind the driver's seat on the floorboard, Deputy Alaniz located a black locked box. Upon opening the box, Deputy Alaniz located 4 bundles of U.S. currency which were held by rubber bands. Three of the bundles appeared to be $20.00 dollar bills, and the fourth bundle appeared to be larger denominations of $100 dollar bills. This is consistent with Deputy Alaniz training and experience, including other vehicle stops Deputy Alaniz has personally made containing illegal narcotics proceeds. These uniform bundles make for easy counting in clandestine transactions.

DEA Task Force Officer (TFO) Foster and DEA Special Agent (SA) Laura Dominguez arrived at the location and took possession of all the methamphetamine inside the three suitcases. SA Dominguez at the Tulsa Regional Office conducted a field test using TruNarc on two of the bags with suspected methamphetamine. The TruNarc showed positive results for methamphetamine. The methamphetamine was packaged and weighed and shipped to the DEA lab for analysis and official weight. The package weight of all the methamphetamine taken from the suitcases was 44528.8 grams.

Based upon my training and experience, I know that 44528.8 grams of methamphetamine is a large quantity of methamphetamine and consistent with possession with intent to distribute. Further, the amount of cash located inside the vehicle is also consistent with drug trafficking activity.

Melisa Susan KYLE was arrested for Aggravated Trafficking Methamphetamine and booked into the Tulsa County Jail.

**Conclusion**

Based on the foregoing, I submit that probable cause exists to believe Melisa Susan KYLE, possessed with the intent to distribute 44,000 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii) and respectfully request that a warrant for the arrest of Melisa Susan KYLE be issued.

Respectfully Submitted,

Task Force Officer Evan Foster
Drug Enforcement Administration

Sworn to before me by telephone this 12th day of May, 2026.

Jodi F. Jayne
United States Magistrate Judge